IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff | : | |
| v. | : | CRIMINAL NO. 11-14 |
| GEORGE KUBINI | : | Electronically Filed |
| DOV RATCHKAUSKAS | : | |
| SANDRA SVARANOVIC | : | |
| ARTHUR SMITH, | : | |
| Defendants. | : | |

## NON-PARTY JPMORGAN CHASE BANK, N.A.'S RESPONSE, OBJECTIONS AND MOTION TO QUASH DEFENDANT KUBINI'S SUBPOENA DUCES TECUM

AND NOW, comes Non-Party JPMorgan Chase Bank, N.A. ("JPMC"), by and through its undersigned counsel, and respectfully submits to the Court its Response, Objections and Motion to Quash Defendant Kubini's Subpoena Duces Tecum. JPMC is one of the named victims of the crimes to which Defendant Kubini and his co-defendants have pleaded guilty. JPMC respectfully asks the Court to quash Defendant Kubini's invalid subpoena and overly broad document requests. As grounds, JPMC states as follows.

### BACKGROUND

1. Following guilty pleas entered by Defendant Kubini and other co-defendants in the above-captioned criminal case, on October 7, 2015, JPMC employee and Recovery Investigations Manager, Kathleen Val, appeared and testified pursuant to a government subpoena issued by the Court on issues relating to the losses suffered and restitution amounts owed to JPMC in connection with this matter.

2. During the October 7, 2015, hearing Ms. Val testified that JPMC received a list of loans from the government, verified the address, buyer's name, seller's name, closing date, sales price, loan amount and other information relating to the loan based on information in JPMC's imaging system and requested and obtained "loss quotes" for each loan from a department within JPMC that prepares the loss quotes. Ms. Val testified how she used the information received from the department that prepared the loss quotes to calculate the loss and restitution owed with respect to each loan that she entered onto the spreadsheet marked and admitted as Government Exhibit H.

3. Ms. Val testified that JPMC gathered and/or prepared the documents marked and admitted as Government Exhibit K. She explained that such documents were the supporting documents for the information she provided with respect to the loans listed on Government Exhibit H and explained in detail the sources from which she obtained the information and how she made the calculations that are reflected on Government Exhibit H.

4. The documents admitted into evidence as Government Exhibit K during Ms. Val's testimony include the "loss quotes" that Ms. Val requested and received and the other supporting documents gathered in connection with each of the 32 loans for which JPMC has submitted evidence of a loss and requested reasonable restitution (as reflected in rows 2-33 of Government Exhibit H). A more detailed description of the "loss quotes" and other documents contained in Government Exhibit K is attached hereto as Exhibit 1.

5. Following Ms. Val's testimony under direct examination by the government, she testified under cross-examination by counsel for Defendants Kubini, Ratchkauskas and Smith.

6. Ms. Val also provided testimony in response to numerous questions from the Court.

7. On November 2, 2015, Defendant Kubini filed a Motion to Compel Production of Documents/Subpoena Duces Tecum [ECF No. 502] that would require the production of

additional documents by non-party JPMC – a victim of the criminal conduct to which Defendant Kubini and his co-defendants have pleaded guilty.

8. On November 4, 2015, the Court entered a Minute Entry on the docket [ECF No. 507] indicating that Defendant Kubini's Motion to Compel Production of Documents/Subpoena Duces Tecum had been Denied as Moot because Defendant Kubini indicated that he had issued a subpoena to JPMC.

9. On November 13, 2015 Ms. Val – who lives and works in Jacksonville, Florida – received the document attached hereto as Exhibit 2, which is entitled: "Motion to Compel Production of Documents/Subpoena Duces Tecum" and which attaches a Subpoena to Testify at a Hearing or Trial in a Criminal Case (the "Subpoena").[1]

10. The Subpoena – which is dated November 2, 2015 – purports to command Ms. Val to appear in Courtroom No. 5B of the Federal Courthouse at 700 Grant Street in Pittsburgh, Pennsylvania on November 10, 2015 at 9:00 a.m. to testify. The Subpoena also purports to command Ms. Val to bring with her the documents listed in an attached document entitled: "Exhibit C."

11. As reflected on the copy of the envelope included in Exhibit 2, the Subpoena was sent via U.S. Mail and postmarked on the afternoon of November 3, 2015.

12. Pursuant to local rules, at 3:59 p.m. EST on Friday, November 13, 2015, counsel for JPMC placed a telephone call to counsel for Defendant Kubini (Mr. Robert E. Stewart, Esquire) at the telephone number (412.471.1957) listed below Attorney Stewart's signature block on the motion filed as ECF No. 502 in order to facilitate a discussion regarding the scope of the Subpoena and the categories of documents being requested. The call was answered by a

---

[1] Notwithstanding the fact that JPMC has been represented by Morgan Lewis in connection with this matter for the past two years and that such representation was specifically referenced and discussed during Ms. Val's testimony, Defendant Kubini failed to contact, work through or even notify counsel for JPMC in connection with the issuance of the Subpoena.

voicemail system that indicated that it was Mr. Stewart's telephone line and that voicemail messages should be left on the system. Counsel for JPMC left a detailed message including his name, telephone number, purpose of the call and identification as counsel representing JPMC in connection with the Subpoena issued by Defendant Kubini. The call lasted one minute thirty-five seconds (1:35). In a manner that is most telling of just how "essential" the requested documents really are, as of the time that these papers were filed, counsel for JPMC has not received a return telephone call or otherwise been contacted by counsel for Defendant Kubini. As such, JPMC has not had the opportunity to discuss and better understand the documents that Defendant Kubini is purportedly seeking and/or make any reasonable attempt to negotiate the scope of the requests.

## THE DOCUMENT REQUESTS

13. As per the document labeled "Exhibit C" that is attached to the Subpoena, Defendant Kubini is requesting "documentation for all properties set forth on government's Exhibit "K" . . . including but not limited to:"

    1. All appraisals/valuations of properties;

    2. All contracts for legal services/fees charged for eviction or foreclosure;

    3. All contracts or fees for services as to property preservation;

    4. All expenses related to eviction, particularly unpaid taxes or utilities by the borrower;

    5. Any and all records that indicated whether JP Morgan Chase sold loans and kept servicing; and

    6. Any and all expenses claimed as loss or restitution suffered by or owed to JP Morgan Chase as a result of this litigation.

## THE SUBPOENA IS DEFICIENT, INVALID & MOOT

14. The Subpoena is deficient and invalid because Defendant Kubini failed to comply with Rule 17 of the Federal Rules of Criminal Procedure ("Rule 17") in the following respects:

    1. The Subpoena has not been sealed by the Court Clerk as required by Rule 17(a);

    2. Defendant Kubini mailed the Subpoena and failed to properly serve it in the manner required by Rule 17(d).

    3. Defendant Kubini did not tender the witness-attendance fee and legal mileage allowance required by Rule 17(d).

15. The Subpoena is moot in that it commands the appearance of Ms. Val and the production of documents at a hearing on November 10, 2015. Defendant Kubini failed to take reasonable steps to have the Subpoena served and delivered to Ms. Val in a timely fashion in advance of the November 10, 2015 hearing.

## THE SUBPOENA DOES NOT MEET THE RULE 17(c) REQUIREMENTS

16. It is well settled that Rule 17(c) "was not intended to provide a means of discovery for criminal cases." *United States v. Nixon*¸ 418 U.S. 683, 698-99 (1974), *citing Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).

17. As this Court set forth in its Memorandum Order dated November 7, 2013 [ECF No. 218] third-party discovery in a criminal case is limited and a defendant must clear various hurdles before the production of documents will be required.

> The party seeking production must "clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700. "These specificity and relevance elements require more than the title of a document and conjecture as to its contents." *United States v. Nagle*, 201 WL 2573855 (M.D. Pa. June 23, 2010) (*citing United States v. Arditti*, 955 F. 2d 331, 346 (5th Cir. 1992)). Rule 17(c) subpoenas are not intended to provide a means of discovery in criminal cases. *Nixon*, 418 U.S. at 699. Indeed, "courts must be careful that [a] Rule 17(c) [subpoena] is not turned into a broad discovery device, thereby undercutting the strict limitation of

5

discovery in criminal cases found in Fed.R.Crim.P. 16." *United States v. Cuthbertson*, 630 F. 2d 139, 146 (3d Cir. 1980). "[M]ore is needed to sustain a subpoena than the defendant's own subjective belief (i.e., hope) that he or she may find something useful by casting a subpoena upon the waters." *United States v. Eisenhart*, 43 F. App'x 500, 505 (3d Cir. 2002).

18. Defendant Kubini, as the proponent of the subpoena, bears the burden of demonstrating that the subpoena clears each of the hurdles set forth by the Supreme Court in *Nixon* and recognized in this Court's November 7, 2013 Memorandum Order. *Nixon*, 418 U.S. at 700 (proponent must clear all hurdles "in order to carry his burden"); *United States v. Brown*, Criminal No. 11-193 (Conti, J.), 2012 WL 1655733, *1 (W.D. Pa. May 10, 2012) ("The party seeking production must 'clear all three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity.'" (*quoting Nixon*, 418 U.S. at 700)).

19. Defendant Kubini has done nothing to clear the applicable legal hurdles. Indeed, even in his Motion to Compel Production of Documents/Subpoena Duces Tecum [ECF No. 502] Defendant Kubini offered nothing more than the broad and conclusory statement: "[T]he supporting documentation is essential to the presentation of defendant's defense as to the loss suffered and other enhancements claimed by the government." Perhaps recognizing this deficiency, rather than pursuing the document requests with the Court's approval, Defendant Kubini simply prepared and mailed a subpoena.

20. Defendant Kubini has not only failed to establish that the documents he is seeking are relevant *and* admissible, he has not even offered any indication or explanation regarding the theory upon which the categories of documents described in the attachment labeled "Exhibit C" to the Subpoena are relevant *and* admissible. Without having the opportunity to discuss the requests with counsel for Defendant Kubini, it is very difficult to guess as to how an appraisal of a property would be relevant and admissible when the calculation of loss and restitution amounts was based on the actual sale price of the property. Similarly, it is difficult to envision how

contracts for legal services and property preservation services would be relevant and admissible when the calculation of loss and restitution amounts was based on the amounts actually paid for such services.

21. Defendant Kubini has not described with any particularity what relevant and admissible evidence he is requesting. Instead, in an effort to ensure that he cast his net of document requests across the entire body of water, Defendant Kubini has requested "<u>documentation for all properties</u>" which is to include "<u>but not [be] limited to</u>" a list of broadly described categories of documents. Rule 17(c) prohibits such "fishing expeditions" and "allows only for the gathering of specifically identified documents *which a defendant knows to contain relevant evidence to an admissible issue at trial.*" *United States v. Tokash*, 282 F. 3d 962, 971 (7th Cir. 2002) (*citing Nixon*, 418 U.S. at 700) (emphasis added). *See also, United States v. Eisenhart*, 43 F. Appx. 500, 505 (3d Cir. 2002) ("[M]ore is needed to sustain a subpoena than the defendant's own subjective belief (i.e., hope) that he or she may find something useful by casting a subpoena upon the waters."); and *In re Sealed Case*, 121 F.3d 729, 755 (D.C. Cir. 1997) ("Rule 17(c) precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted or where the claim that subpoenaed materials will contain such evidence represents mere speculation.").

22. Here, the records are not being sought to assist a criminal defendant who remains cloaked in the presumption of innocence at trial, but rather are being sought in connection with sentencing following Defendant Kubini's admission of guilt and entry of a guilty plea to crimes for which JPMC is a named victim. As a named victim of Defendant Kubini's admitted criminal activity, JPMC should be afforded even greater protection from the cost and unreasonable and/or oppressive burden of trying to comply with a broad request for the production of documents that

are not relevant, admissible or necessary for the Court to make a reasonable determination of loss and restitution at the sentencing stage.

### THE DOCUMENTS REQUESTED ARE NOT NECESSARY TO REASONABLY CALCULATE JPMC'S LOSS AND THE AMOUNT OF RESTITUTION IT IS OWED

23. The legal standard for establishing the amount of loss for purposes of restitution is by a preponderance of the evidence. 18 U.S.C. § 3664(e).

24. Courts routinely rely on the information contained in the Probation Department's Pre-Sentence Report ("PSR") to use its discretion in determining a reasonable and appropriate amount of restitution and fashioning a restitution order. It is recognized that a PSR generally bears "sufficient indicia of reliability to permit the district court to rely on it at sentencing." *United States v. Morales-Aponte*, 229 F. App'x 69, 72 (3d Cir. 2007) (quoting *United States v. Cyr*, 337 F. 3d 96, 100 (1st Cir. 2003)). In this case, the victim and the government have gone even further by providing testimony and introducing documentary evidence in support of the restitution award. Defendant Kubini has done nothing to demonstrate that the information provided by JPMC and introduced into evidence lacks sufficient indicia of reliability.

25. Courts have been given reasonable latitude in determining the appropriate amount of restitution as it has been recognized that it can often be difficult in fraud cases to determine the precise amount of loss caused by the criminal activity and the appropriate amount of restitution owed to the victims. *See United States v. Black*, 338 F. App'x 235, 239 (3d Cir. 2009) (holding that the District Court did not err in awarding a restitution amount that reflected the sales price in various properties' foreclosure sales, "nor in using the same number for guideline calculation purposes because the amount is an accurate representation of actual loss."); *United States v. DeMarco*, No. CRIM. 10-790, 2013 WL 1874915, at *4 (E.D. Pa. May 2, 2013), *aff'd sub nom.*, *United States v. Roberts*, 552 F. App'x 136 (3d Cir. 2014) (citing *United States v. Console*, 13

F.3d 641, 674 (3d Cir. 1993) (holding that the district court did not abuse its discretion by "estimating the amount of loss associated with each fraudulent insurance claim to be the total amount paid on that claim" even where it was recognized that "some portions of these claims payments may have covered legitimate injuries and medical expenses" because of the difficulty of having the judge at sentencing try to distinguish the legitimate portion of the claims payments from the portions associated with the fraudulent bills.)) *See also United States v. O'Malley*, 495 F. App'x 239, 242 (3d Cir. 2012) (holding that "[i]n light of the evidence and the difficulty in calculating mortgage fraud loss, the District Court's conclusion was a 'reasonable estimate of the loss' based on 'available information.'"); *United States v. Cocchiola*, 358 F. App'x 376, 382 (3d Cir. 2009) (same).

26. JPMC has provided sufficient documentation, testimony and information from its systems of record to establish a reasonable calculation of its losses and the amount of restitution it is owed with respect to the 32 loans for which JPMC has submitted evidence of a loss and requested reasonable restitution (as reflected in Government Exhibit K and in rows 2-33 of the spreadsheet in Government Exhibit H). As the Court recognized in *Console*, 123 F. 3d at 674, "Congress considered the unusual situation where the exact amount owed would be difficult to determine and authorized the court 'to reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim.'" *United States v. Citarelli*, 187 F. Supp. 2d 244, 250-51 (D.N.J. 2002).

27. JPMC has already done more than might typically be required of a victim in the efforts it has undertaken to provide the information and evidence needed to support the loss and restitution calculations. The Court should not permit Defendant Kubini to force JPMC to conduct a large search for broadly described categories of documents that are not relevant and/or necessary for

the Court to reasonably determine the amount of loss and restitution owed to JPMC for purposes of sentencing.

## IT WOULD BE UNREASONABLE AND/OR OPPRESSIVE TO REQUIRE JPMC TO TRY TO COMPLY WITH THE SUBPOENA

28. Rule 17(c)(2) permits the Court to quash or modify a subpoena if requiring compliance would be unreasonable or oppressive.

29. As currently written, compliance with the requests would be unreasonable and/or oppressive to JPMC because it would require JPMC to search across a variety of electronic databases and document storage facilities for a vast array of documents and data including, among other materials: (a) contracts with vendors such as lawyers, property management and maintenance services providers, real estate appraisers and other service providers; (b) invoices received from such vendors; (c) payment records, receipts and other records and documentation relating to any and all losses suffered in connection with the criminal activity of all defendants in this matter; and (d) any other documentation relating to each of the 32 properties that were the subject of loans for which JPMC has submitted evidence of a loss and requested reasonable restitution (as reflected in Government Exhibit K and rows 2-33 of Government Exhibit H). As such, the Subpoena should be quashed.

## JPMC IS AVAILABLE TO PRODUCE DOCUMENTS TO ASSIST THE COURT

30. JPMC tried, to no avail, to discuss the requests with counsel for Defendant Kubini so that the requests could be tailored to potentially relevant information. Defendant Kubini's failure to engage with JPMC in any discussion regarding the document requests belies any suggestion that such documents are "essential" to his defense. Under these circumstances, the failure of Defendant Kubini to seek to take advantage of such an opportunity should rightfully result in the Subpoena being quashed in its entirety.

31. Notwithstanding Defendant Kubini's failures, in an effort to assist the Court with respect to its analysis of the loss and restitution determinations, JPMC has prepared for the Court's review, and attached hereto as Exhibit 3, a sample packet of vendor invoices and payment records for one of the 32 loans for which JPMC has submitted evidence of a loss and requested reasonable restitution (as reflected in Government Exhibit K and in rows 2-33 of the spreadsheet in Government Exhibit H).[2]

32. The documents contained in Exhibit 3 consist of vendor invoices relating to default-related services that were received and paid by JPMC in connection with Loan No. xxxx7805 that was issued to a buyer with the initials LLN (which appears on Row 4 of Government Exhibit H and can be found in Government Exhibit K on the document labeled "Supporting Document re: Row 4").

33. Vendor invoices and payment records for mortgage loan default-related services (e.g., bankruptcy, foreclosure, eviction, legal, appraisal, property preservation services, etc.) such as those contained in Exhibit 3 are received and processed for payment by JPMC's Invoice Processing group. Such records are typically stored in one of JPMC's two systems of record for such items: (1) the Invoice Management System ("IMS"); or (2) the iClear System. The documents contained in Exhibit 3 were pulled from IMS based on a search for all records relating to Loan No. xxxx7805. It can reasonably be estimated that it would take approximately 20-60 minutes per loan for JPMC's Invoice Processing group to search for and compile such materials in connection with each of the 32 loans for which JPMC has submitted evidence of a

---

[2] While JPMC believes the Court has sufficient information to exercise its discretion in determining that JPMC has suffered significant financial losses in connection with the fraudulent criminal activity to which Defendant Kubini and his co-defendants have pleaded guilty and is owed $1,977,408.39 in restitution, it will, of course, make itself available to the Court should the Court believe that additional documentation is needed to make a reasonable estimate of the loss and the amount of restitution owed to JPMC.

loss and requested reasonable restitution (as reflected in Government Exhibit K and in rows 2-33 of the spreadsheet in Government Exhibit H).

34. The documents contained in Exhibit 3 correspond with the evidence that JPMC has already searched for and compiled in connection with the preparation of the spreadsheet and supporting materials that were admitted into evidence as Government Exhibits H & K, respectively, during Ms. Val's October 7, 2015 testimony.

35. JPMC submits that the materials it has provided in Exhibit 3 in its effort to assist the Court should provide reasonable comfort and support with respect to the information presented regarding the default-related services costs in Government Exhibits H & K. If the Court determines that, under the circumstances, it would be appropriate for JPMC to produce to the Court and Defendant Kubini such materials for an additional sample of loans, JPMC will make them available. In the interests of time and cost, JPMC submits that a sample of three or four additional loans should be selected for such a review and comparison.

## **CONCLUSION**

36. Under the circumstances and for the reasons described above, JPMC respectfully requests that this Court enter an Order quashing Defendant Kubini's Subpoena, directing Defendant Kubini to reimburse JPMC for the costs it incurred in seeking this relief and providing further instruction as to whether a production of additional supporting documents for an additional sample of loans is necessary and appropriate.

37. If it is determined that a production of invoices and materials such as those provided in Exhibit 3 for an additional sample of loans would be helpful and appropriate for review by the Court and Defendant Kubini, JPMC respectfully requests that this Court enter an Order requiring Defendant Kubini to reimburse JPMC for the costs associated with searching for, organizing and producing the additional materials.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: November 19, 2015 | /s/ Daniel Carmeli<br>Nathan J. Andrisani (Pa. ID No. 77205)<br>MORGAN, LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, PA  19103-2921<br>(215) 963-5000<br>(215) 963-5001 (facsimile)<br><br>Daniel Carmeli (Pa. ID No. 313617)<br>MORGAN, LEWIS & BOCKIUS LLP<br>One-Oxford Centre<br>Thirty-Second Floor<br>Pittsburgh, PA 15219-6401<br>(412) 560-3300<br>(412) 560-7001 (facsimile)<br><br>Attorneys for<br>*Non-Party JPMorgan Chase Bank, N.A.* |

## CERTIFICATE OF SERVICE

I certify that on November 19, 2015, a true and correct copy of **NON-PARTY JPMORGAN CHASE BANK, N.A.'S RESPONSE, OBJECTIONS AND MOTION TO QUASH DEFENDANT KUBINI'S SUBPOENA DUCES TECUM** was filed and served via the ECF filing system upon all counsel of record.

Dated: November 19, 2015             /s/ Daniel Carmeli
                                     Daniel Carmeli